## Lynch *versus* Brudie.

1. If the owner of land sold for taxes during his minority,redeem within ten years after arrival at age, under the 4th section of Act of March 13th 1815 (Unseated Land), he must pay the purchaser the value of improvements.

2. Where land sold for taxes is recovered by the owner because it was seated at the time of sale, under the Act of April 12th 1842 (Unseated Land), he must pay for the improvements, unless the purchaser knew when they were made that the land was seated.

November 11th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD, and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 111, to October and November Term 1869.

This was an action of ejectment brought, July 20th 1867, by Francis M. Lynch against Margaret Brudie for a lot of ground on Pike street, in Allegheny city. The plaintiff claimed as devisee of Francis Messer; the defendant's title was derived from a purchaser of the lot at a treasurer's sale for taxes as unseated, June 13th 1854.

On the trial before Mellon, J., the plaintiff gave in evidence a deed dated January 13th 1843, from Michael Elmsley to Francis Messer for the lot in dispute. They also gave in evidence the will of Messer dated August 4th 1843. Messer died in October of the same year. The will was not given in the paper-books, but it appeared to be assumed by all, that by it the lot was devised to the plaintiff. Peter Mayor testified that in 1848 he went on the lot to collect rent as administrator of the widow of Messer; there was then an occupied house on the lot; the occupant said he was not able to pay rent but would pay the taxes; the plaintiff was born June 9th 1842. William Lynch testified that shortly after the tax sale, the guardian of the plaintiff and himself went together to look for the lot, they found a dwelling-house fronting on the street and an unoccupied house on the back of the lot. In 1865 witness called on the defendant who then lived on the lot; there was then a double house on it; the defendant claimed the lot as hers.

The defendant then gave in evidence assessments of taxes in 1852 and 1853 on the lot as on Pike street, in the name of Messer as a non-resident, and a sale by the treasurer for taxes, June 13th

1854, to Casper Gang and George Gerst for $350; deed from Gang and Gerst to William Adams, June 18th 1856, the consideration of which was $550; deed from Adams to defendant, September 4th 1856, consideration $550.    The defendant further proved that about 1848 or 1850 there was an old shanty on the lot which was torn down in 1851, leaving only one of its posts; in 1852 it was not occupied in any way, no fence around it nor anything by which it could be occupied; it was assessed as vacant, $550 was the full value of the lot at the tax sale, Gang put up a fence in 1856; the house and lot would sell for $4,050; the house would now cost about $2300, would cost $1500 when it was built.

The plaintiff in rebuttal proved that in May 1865 his attorney tendered to the treasurer the amount necessary to redeem the lot, and that it was refused.

The plaintiff asked the court to charge:—

1. That property being once seated, it cannot be sold after as unseated, as in this case: there being a dwelling-house on it at one time, it cannot become unseated or vacant so as to be sold under the law for taxes.

2. That the lot in question was not an unseated or vacant lot at the time of the tax sale produced by the defendant, such as could be legally sold for taxes.

The court charged:—

" There is perhaps no branch of our law more difficult to define with certainty than that relating to tax sales; and as regards the present case, it will be better understood and equally serve the purpose, to give you general instructions, than to answer specially each particular proposition presented by the learned gentlemen on either side.    The plaintiff has shown what we call a primâ facie title—that is, a title which will entitle him to your verdict if the defendant has shown nothing to prevent it.    Because, if Francis Messer or Mercier, the plaintiff's ancestor, was in possession, by himself or his tenants, under the sale and other deeds in evidence, he would have a right to recover against a new intruder." * * *

" You may determine whether or not he tendered to the treasurer or his deputy, the taxes, costs and percentage, in order to redeem within the time after his coming of age, as required by law; if he did, or his attorney did it for him, there is no need of further inquiry, that would leave the defendant no standing room. The plaintiff would be entitled to recover unconditionally, as the effect of such a redemption, if in time and of sufficient amount, would annul the tax sale althogether. * * *

" But the second question in the case is, whether the lot, at the date of the assessment and tax sale on the assessment book or tax duplicate, is marked vacant.    We have not and never had, I believe, any other assessment book or separate lists of seated and unseated lands in this county, than is shown by the duplicates on

[Lynch *v.* Brudie.]

which the assessments are marked.   On the duplicate, this lot was marked vacant and the owner a non-resident.   But as regards tax sales there is a wide distinction between the meaning of the words *vacant* and *unseated*.   They are by no means convertible terms.   A lot may be entirely vacant and not unseated; and in this county and at the date of this sale, there was another and different remedy or mode of procedure provided for the collection of taxes from property which was not unseated, but only vacant.   The word unseated is not, in its technical meaning, very easily applicable to city property, and the Supreme Court has nearly excluded its application to such property altogether.   A city or town lot such as this can only be regarded as unseated, and subject as such to sale, when the owner has abandoned it without the intention of reclaiming it. It is not a suspension of occupancy or possession, but a total abandonment of the property, that is meant by the term unseated. The term originated in the practice among early settlers of taking up a tract, building a cabin and occupying it a few years till they saw something elsewhere that pleased them better, then getting up and leaving.   Lands so abandoned became unseated, and the term still retains its original meaning. * * * Taking the word unseated in this sense, you will perhaps find it difficult to say that this lot was unseated when assessed for the taxes for which it was sold. If Messer's lot had a shanty on it, and by himself or tenants was occupying it, it was seated when so occupied.   Messer left it and moved to another part of the country.   His tenant also left it, and finally the shanty disappeared; the last seen of it was a post standing in 1851, according to the witness Gang.   But had Messer abandoned it, intending to relinquish ownership in it, or was it a mere suspension of possession, leaving it unoccupied until it suited his convenience to do otherwise with it, as hundreds of lots are left in large cities, on which the respective owners still set great value?   If this lot was unseated, according to the sense in which I have explained the term, and plaintiff did not redeem, your verdict should be for the defendant.   But if it was seated and merely vacant, then your verdict should be for the plaintiff; and this raises the question whether in case you find for the plaintiff, the verdict should be absolute or conditional on payment of defendant's improvements.   [I instruct you, that the value of defendant's improvements may be assessed and the time specified for their payment.]   If any case justifies such finding when seated property has been sold, it is this.   The plaintiff, or those under whom he claims, stood by until the property passed out of the hands of the original purchasers, and the vendee had put valuable improvements on it.   I incline to think that principles of general equity would compel him to make compensation under the circumstances, even without the aid of the Act of Assembly.   [If you find for the plaintiff, therefore, you will value or assess the value of the im-

[Lynch v. Brudie.]

provements made by the defendant, and designate the time within which plaintiff must pay the amount, in order to entitle him to possession.] In doing this deal as fairly as possible between these parties. A good deal is said about values enhanced by change of times, but this applies as well to the lot as the improvements, so that the relative value between them may still be observed. In accordance with the foregoing view, the points of law presented by the learned counsel on either side may be regarded as affirmed or denied."

The verdict was for the plaintiff, and "that he pay to defendant the sum of 2566 dollars for improvements, payable in nine months from date."

The plaintiff took out a writ of error and assigned for error the refusal of the court to affirm his points; the parts of the charge in brackets, and "in not charging the jury from the evidence that the lot had been seated, and that it did not come under the law or operation of the law regulating unseated land in any way."

J. R. Large, for plaintiff in error.—The verdict should have been unconditional, because the property did not come under the operation of the laws relating to unseated land; the acts relating to compensation do not apply to this case. He referred to Act of April 12th 1842, § 20, Pamph. L. 265, Purd. 997, pl. 45.

H. P. Mueller and T. Ewing, for defendant in error, referred to Act of 1842, supra; McKee v. Lamberton, 2 W. & S. 107; Larimer v. McCall, 4 Id. 133; Lambertson v. Hogan, 2 Barr 22; Stewart v. Trevor, 6 P. F. Smith 374.

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—The plaintiff in error has no reason to complain on account of the matters contained in his 1st and 2d assignments of error. The learned judge went as far with the plaintiff below on the points submitted by his counsel as to what constituted a town lot seated and so to be regarded, and not liable to be sold for taxes as the law, at the utmost stretch, would allow, and, in my judgment, a good deal further; this is not now before us, however, and he recovered, subject to pay the assessed value of improvements to the defendant; and the instructions sanctioning this constitute the 3d and 4th assignments of error.

This was right by positive law, on either of the grounds on which he claimed to recover. If on a redemption by the plaintiff within two years after coming of age, the lot having been sold in his minority, the 4th section of the Act of 1815 gives the defendant the value of improvements made. And if the recovery was to be upon the ground that the lot was seated when assessed with the taxes for which it was sold, the defendant was entitled to the value

13 P. F. SMITH—14

[Lynch *v.* Brudie.]

of improvements by the Act of the 12th of April 1842, unless they were made with a knowledge that the lot was seated. There was no pretence of this. All the facts and proof about the lot would lead to an opposite conclusion.

The 5th assignment may be dismissed with the remark, that the judge was not requested to charge as therein claimed that he ought to have charged, viz.: that the lot was seated and not subject to a sale for taxes. Whether it was or not, was for the jury to say, and he would have committed an error if he had so charged. He was not bound so to charge, not being requested to do so.

Judgment affirmed.